William J. Regan, S.
In this proceeding petitioner has requested that the court construe and determine paragraph fourth of the last will and testament of the above-named deceased.
Charles A. White died on July 12, 1947. His will dated May 20, 1946, was probated in this court on July 15, 1947, at which time letters testamentary and letters of trusteeship were issued. Following a judicial settlement of the executors on May 27, 1957, the trusts in said will were fully funded and the trustees have been serving in that capacity since that time.
Paragraph fourth of the will to be construed in this proceeding states:
"Fourth: One-half of the rest, residue and remainder of my estate I give, devise and bequeath to ashford g. p. murch and the manufacturers and traders trust company, in trust nevertheless, to invest and reinvest the same, and collect the income therefrom, and pay the income to my son, jewett white, as long as he shall live, and upon his death to pay the same to his wife, byrd carr white, if she shall survive him, as long as she shall live and remain unmarried.
"Upon the death of the survivor, or upon the remarriage of byrd carr white, the trustees shall distribute the principal to the children of jewett white, him surviving, share and share alike, if they have attained the age of twenty-one years, etc.”
The income of the trust has been paid as directed above to Jewett White from the date that the trust was funded to the date of his death on December 9, 1974. On January 12, 1955 in the State of Virginia there was a final divorce decree between Jewett White and his wife, Byrd Carr White. Byrd Carr White is presently unmarried. The issue that presents *325 itself, therefore, is whether the trust will continue for the life of Byrd Carr White, or at least until her remarriage as provided in paragraph fourth of the will, or whether the divorce of January 12, 1955 bars Byrd Carr White from taking under said will.
It has long been recognized law that a gift to the wife or husband of a married person, in the absence of an expression of a contrary intent, will be construed to mean the man or woman who is the wife or husband of the person at the time of the execution of the will, and not a person he or she may thereafter marry; but a gift to the "widow” of a designated person ordinarily means such wife as may survive him. (Williams v Alt, 226 NY 283.) It has long been held that a term of description may not be distorted into a condition limiting the gift. It is description that controls the identity of the beneficiary. For example, if a gift is made upon the death of a son to his "widow”, then what is intended is the wife that survives him at the time of his death even though he may have had two or three prior marriages. On the other hand, if the wife were described by name, then it must be presumed under existing law that the gift was intended for the named person and no other. In Matter of Tuck (165 Misc 346) the court held that where the gift is to a specifically named "wife” or "widow” of a designated individual, the gift is a personal one to the named beneficiary and the terms "wife” or "widow” are deemed to be merely descriptive. It was further stated therein that the argument that the gift was limited to a person who held a valid marital status with the son of the deceased at the time of his death and was not intended as a personal gift to the named wife, has no foundation in reason. This case was affirmed by the Court of Appeals on October 17, 1939 (281 NY 697, affg 256 App Div 971).
This case is to be distinguished from the decision rendered by this court on February 10, 1975, Matter of Hedrick (80 Misc 2d 766). A construction proceeding was prompted in the Hedrick case by reason of the many marriages that the son of the deceased had entered into. However, the will in that case did not name the son’s wife by name, but referred only to his "wife”.
As stated in Matter of North (32 AD2d 862) the Legislature modified this principle of decisional law, but only as between a testator and a former spouse, as seen by the enactment of EPTL 5-1.4. While EPTL 5-1.4 deals with the revocatory effect *326 of divorce, etc., it is evident that the provisions contained therein are personal to the testator and his wife. They do not affect gifts to wives of other persons. This section effects a radical change in the law of this State governing the revocation of wills. Revocation wholly or in part will not otherwise be implied from a change in the circumstances of the testator except as authorized by statute. As was appropriately pointed out by counsel and the guardian ad litem, the deceased, Charles A. White, was a prominent attorney specializing in estate practice. He was the draftsman of numerous wills during his lifetime, a great many of which contained complicated trust provisions. He was well versed in will draftsmanship and knew well the meanings and applications of words and expressions contained in trust provisions. The will in question is clear and unambiguous. It contains no hidden meanings or implied intentions. The testator left no doubt but that he intended to provide for Byrd Carr White following the death of his son, for as long as she shall live, or at least until her remarriage, regardless of what the marital status between the said Byrd Carr White and Jewett White may have been at the time of the death of Jewett White.
It is accordingly the decision of this court that paragraph fourth of the last will and testament of the deceased be construed so as to continue the trust provided for thereunder as therein provided, that is, to pay the income of said trust to Byrd Carr White as survivor of Jewett White as long as she shall live and remain unmarried.